IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNIFER CHOTAS,** | : |
| **Plaintiff** | : Civil No. 1:14-cv-0084 |
| | : |
| v. | : |
| | : |
| **AREA STORAGE AND TRANSFER INC.; DAVID F. DEMCHAK II; and LORI DEMCHAK,** | : |
| | : |
| | : **Judge Sylvia H. Rambo** |
| **Defendants** | : |

# M E M O R A N D U M

In this civil action, Plaintiff sued her former employer pursuant to Section 3730 of the False Claims Act, 31 U.S.C. §§ 3729 - 3733, for unlawful termination in retaliation to her complaints about and efforts to stop her employer's allegedly fraudulent conduct. Presently before the court is Defendant Area's motion to dismiss (Doc. 11), which challenges whether Plaintiff sufficiently pleaded that she engaged in conduct protected by the FCA. For the following reasons, the court concludes that Plaintiff sufficiently pleaded her cause of action and will deny Defendant Area's motion to dismiss.

**I.      Background**

As is required when deciding a motion to dismiss, the court will accept the well-pleaded factual averments set forth in the complaint (Doc. 1) as true and view them in the light most favorable to Plaintiff as the nonmoving party.

**A.     Facts**

Defendant Area Storage and Transfer Inc. ("Defendant Area") is a Pennsylvania Corporation with its principle place of business located within the

Middle District of Pennsylvania and an employer of approximately 400 employees. (*Id*. at ¶ 2.)  David F. Demchak II ("Mr. Demchak") and Lori Demchak ("Mrs. Demchak") are husband and wife and are Defendant Area's President and Vice President, respectively.  (*Id*. at ¶ 3.)  The United States Postal Service ("USPS") contracts with private companies to provide various services, including those for transportation and delivery.  (*Id*. at ¶ 13.)  Defendant Area was retained by USPS to supply transportation services, which involved the physical transportation of mail from one location to another via long-haul tractor trailers.  (*Id.*)  Defendant Area has operated Highway Contract Routes ("HCRs") for USPS since 1989.  (*Id*. at ¶ 2.)  In order to receive and maintain an HCR, Defendant Area was required to submit various forms and certifications, which assist USPS in its evaluation of prospective suppliers based on supplier eligibility, financial capability, past performance, and supplier capability.  (*Id*. at ¶¶ 14-15.)  For purposes of determining financial capability, USPS requires the supplier submit detailed financial information, copies of the last three months' bank statements, a letter from the supplier's bank stating that the contractor has an available credit line of at least ten-percent of the estimated contract amount, and credit reports from the three major credit bureaus.  (*Id*. at ¶ 15.)  For purposes of determining supplier capability, USPS assesses the supplier's equipment capacity, which incorporates, *inter alia*, a review of the supplier's fleet.  (*Id*. at ¶ 16.)

        Plaintiff, Jennifer Chotas, began her employment as Defendant Area's Accounting and Analysis Manager on July 11, 2011.  (*Id*. at ¶ 1.)  As part of Plaintiff's job duties, she was responsible for preparing and reviewing Defendant Area's financial records, including accounting and ledger sheets, balance sheets,

equipment inventory records, profit and loss statements, financial statements, and banking records, and was responsible for payroll auditing, human resources planning and management, accounting controls maintenance, and other duties as assigned by Mr. and Mrs. Demchak. (*Id.* at ¶¶ 11, 20.) In late February 2012, Mrs. Demchak informed Plaintiff that certain documents were soon due for purposes of renewal of Defendant Area's contracts with USPS. (*Id.* at ¶ 21.) Soon thereafter, Plaintiff took three days of personal leave (*Id.*) and, upon her return on March 5, 2012, Mrs. Demchak told Plaintiff that her assistance with the USPS documents was not needed (*Id.* at ¶ 22).

On March 6, 2012, while reconciling Defendant Area's February 2012 PNC bank account statement, Plaintiff discovered a $725,000.00 adjustment to the contract revenue account which replaced a January 5, 2011 $225,000.00 cash deposit from Kemner Delivery Service. (*Id.* at ¶ 23.) This adjustment effectively increased Defendant Area's revenue by $500,000.00. (*Id.*) Plaintiff also noticed that a $500,000.00 payment journal entry had been posted to the company's computerized account ledger in QuickBooks, which recorded the purchase of $500,000.00 worth of trucks to correspond to a $500,000.00 decrease in cash, which was not reflected in the bank statements. (*See id.* at ¶ 24.) Plaintiff also discovered a second payment journal entry for $500,000.00, which overrode the first entry by making the financial accounts reflect the $500,000.00 disbursement for trucks effective December 31, 2011. (*Id.*) All three of these transactions occurred within an eleven minute period on March 1, 2012. (*See id.* at ¶¶ 23, 24.)

On March 7, 2012, Plaintiff printed the journal entries that overstated revenue by $500,000.00 and questioned Mrs. Demchak about the changes. (*Id.* at ¶

25.)  Mrs. Demchak acknowledged that she made the changes, explaining that she "was just trying something for up and coming [USPS] contracts."  (*See id*.)  In response to Plaintiff's characterizing Mrs. Demchak actions as fraudulent, Mrs. Demchak disposed of the printout.  (*Id.*)

On March 8, 2012, Plaintiff audited other QuickBooks accounts and found entries affecting Fuel line items for 2009, 2010, and 2011.  (*Id*. at ¶ 26.)  The following day, Plaintiff brought the results of her investigation to the attention of Mrs. Demchak, who again indicated that she was "just trying something" for the USPS contracts.  (*Id.* at ¶ 27.)  Plaintiff again told Mrs. Demchak that these alterations should not have been made.  (*Id*.)  Plaintiff corrected each of the entries.  (*Id.* at ¶ 28.)  Soon thereafter, Plaintiff began to be minimized and marginalized in her job duties and responsibilities by Mrs. Demchak.  (*See id*. at ¶¶ 34-41.)

On August 16, 2012, Plaintiff discovered a directory in Defendant Area's shared computer hard drive labeled "Area_Postal," in which she found various files related to Defendant Area's USPS business, including one called "Area_Financials."  (*Id*. at ¶ 29.)  In that file, Plaintiff found the financial documents submitted to USPS, which were dated March 2, 2012, and initialed by Mr. Demchak, and a letter dated March 2, 2012, that forwarded Defendant Area's financial statements for 2009, 2010, and 2011, and certifying that the documents reflected an accurate overview of the company's financial strength.  (*Id*.)  Upon examination, Plaintiff realized that the submissions contained the false information she previously brought to Mrs. Demchak's attention, inasmuch as Defendant Area's 2011 net income was falsely overstated by $500,000.00.  (*Id.* at ¶ 31.)

On August 21, 2012, Plaintiff reported her discovery to Al Gremmel, Defendant Area's Operations Manager, and informed him that there were "fraudulent entries" on the financial submissions to USPS. (*Id.* at ¶ 33.) Plaintiff also told Mr. Gremmel that she believed the documents and entries she had discovered had been illegally used to obtain USPS contract renewals. (*Id.*) Mr. Gremmel brought Plaintiff's accusations to the attention of the Demchaks, and discovered that Mr. Demchak was aware of the fraudulent activities. (*Id.* at ¶¶ 43-45.)

On August 23, 2012, Plaintiff left work early with the approval of Mr. Gremmel. (*Id.* at ¶ 46.) The following day, Plaintiff met with Mrs. Demchak and Mr. Gremmel, during which time she was informed that her employment was terminated. (*Id.* at ¶ 48.) Mr. Gremmel confirmed that Plaintiff's reports of fraudulent activities contributed to Mrs. Demchak's decision to terminate her employment. (*Id.* at ¶ 49.) Plaintiff seeks relief pursuant to 31 U.S.C. § 3730(h).

### B. Procedural History

On January 17, 2014, Plaintiff initiated this lawsuit by filing a complaint against Defendant Area, Mr. Demchak, and Mrs. Demchak. (Doc. 1.) On March 14, 2014, the parties filed a joint stipulation of dismissal for Mr. Demchak and Mrs. Demchak from this action. (Doc. 8; *see also* Doc. 9.) The remaining defendant, Defendant Area, filed the instant motion to dismiss and brief in support on March 21, 2014. (Docs. 11 & 12.) Plaintiff filed her response in opposition on April 4, 2014 (Doc. 16), and Defendant Area filed its reply on April 11, 2014 (Doc. 18). Thus, this matter is fully briefed and is ripe for consideration.

## II.   Legal Standard

Defendant Area moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (citing *Twombly*, 550 U.S. at 555, 557). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citing *Phillips*, 515 F.3d at 234).

**III.**     **Discussion**

Plaintiff's claim arises from Defendant Area's allegedly retaliating against her in violation of the False Claims Act.  According to Plaintiff, by submitting fraudulent records to USPS in order to be awarded a HCR contract, Defendant Area exaggerated the financial strength of the company which resulted in Defendant Area's receipt of a contract for which it otherwise may not have received.  By investigating and correcting the false entries, and then raising her concerns to Defendant Area's upper management, Plaintiff maintains that she took lawful actions geared toward exposing Defendant Area's attempt to defraud USPS, and claims that the reduction of her duties and eventual termination of employment was in retaliation for her lawful actions.  Defendant Area challenges whether Plaintiff's actions constituted protected activity under the FCA.

The FCA is a statutory scheme designed to discourage fraud against the federal government. *See U.S. ex rel. Wilkins v. United Health Grp. Inc.*, 659 F.3d 295, 304 (3d Cir. 2011).  Its cornerstone provision bars any person from presenting a "false or fraudulent claim for payment or approval" to the United States. 31 U.S.C. § 3729(a).  In 1986, Congress amended the FCA by adding an anti-retaliation provision to protect whistleblowers.  *See* False Claims Act, Pub. L. No. 99-562, § 4, 100 Stat. 3153, 3157-58 (1986).  The purpose of this whistleblower provision is to promote enforcement of the FCA by assuring those who may be considering exposing fraud that they are legally protected from retaliatory acts.  *See* S. Rep. No. 99-345, 34, 1986 U.S.C.C.A.N. 5266, 5299 (1986).

Section 3730(h) protects an employee who "is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . .

. in furtherance of [an FCA action] or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1).  As the Third Circuit has explained:

> In order to establish a claim under § 3730(h), [a plaintiff] must show[:] (1) he engaged in protected conduct, (i.e., acts done in furtherance of an action under § 3730)[;] and (2) that he was discriminated against because of his protected conduct. . . .  For a plaintiff to demonstrate that he was discriminated against "because of" conduct in furtherance of a [FCA] suit, a plaintiff must show that[:] (1) his employer had knowledge he was engaged in "protected conduct"; and (2) that his employer's retaliation was motivated, at least in part, by the employee's engaging in "protected conduct."

*U.S. ex rel. Protilla v. Riverview Post Acute Care Ctr.*, Civ. No. 12-cv-1842, 2014 WL 1293882, *9 (D.N.J. Mar. 31, 2014) (citing *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 110-11 (3d Cir. 2007)).  Significantly, an employee does not need to have necessarily filed a qui tam action in order to have engaged in protected activity; rather, protected activity in this context encompasses steps taken in furtherance of an action under or efforts to stop violations of the FCA. *See* 31 U.S.C. § 3730(h).  This language manifests Congress' intent to "protect employees while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together."  *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188 (3d Cir. 2001) (quoting *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. 1998))

The chief inquiry here is whether Plaintiff's activity fell within the protected category under the FCA.  The Third Circuit has explained:

> Determining what activities constitute "protected conduct" is a fact specific inquiry.  But the case law indicates that "the protected conduct element . . . does not require the

> plaintiff to have developed a winning qui tam action . . . It only requires that the plaintiff engage [ ] in acts . . . in furtherance of an action under [the False Claims Act]." . . . Under the appropriate set of facts, these activities can include internal reporting and investigation of an employer's false or fraudulent claims."

*Hutchins*, 253 F.3d at 187 (alteration in original) (quoting *Yesudian*, 153 F.3d at 739-42).

Moreover, the FCA also requires employees to prove they were discriminated against "because of" their "protected conduct." To meet this requirement, a plaintiff must show his employer had knowledge that he was engaged in protected conduct and that the employer retaliated against her because of that conduct. *Id*. at 188. Such a requirement is essential because without knowledge that an employee is contemplating an FCA suit, "there would be no basis to conclude that the employer harbored [Section 3730(h)'s] prohibited motivation [*i.e.,* retaliation]." *Id*. (citing *Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp. 2d 1307, 1314 (M.D. Ala. 1999)). The Third Circuit has explained in this regard:

> [T]he kind of knowledge the [employer] must have mirrors the kind of activity in which the [employee] must be engaged. What the [employer] must know is that the [employee] is engaged in protected activity . . . – that is, an activity that reasonably could lead to a False Claims Act case.

*Id*. (alterations in original). "Whether an employer is on notice of the "distinct possibility' of False Claims Act litigation is also a fact specific inquiry." *Id*. at 189. Thus, the issue is framed as:

> [W]hether the employee engaged in conduct from which a fact finder could reasonably conclude that the employer could have feared that the employee was contemplating

> filing a qui [] tam action against it or reporting the
> employer to the government for fraud . . . . [L]itigation . . .
> [is] a "distinct possibility" only if the evidence reasonably
> supports such fear; if the evidence does not support this
> fear, litigation would not have been a distinct possibility.

*Id*. (alterations in original) (citing *Mann*, 49 F. Supp. 2d at 1314).

Here, Plaintiff spoke to her supervisors and Defendant Area's Vice President on multiple occasions to inform them that she believed that adulterating the company's records was fraudulent. Moreover, Plaintiff made it clear that she refused to assist in – and took measures to correct – the fraudulent conduct. Plaintiff also alleges that she engaged in an investigation that produced evidence confirming that Defendant Area certified and submitted adulterated statements to USPS for purposes of obtaining HCRs. Plaintiff alleges that, following her discovery of the adjustments on Defendant Area's February 2012 PNC bank account statements on March 6, 2012, she investigated and discovered evidence that demonstrated the fraudulent records were submitted to USPS. At this stage of the litigation and in light of the legal standard applicable when considering a motion to dismiss, the court concludes that Plaintiff has pleaded sufficient facts to show that she engaged in protected conduct, that is, conduct that could be accepted as designed to collect information about possible fraud.

Plaintiff further alleges that she characterized the conduct as fraudulent during her conversations with Mrs. Demchak and Mr. Gremmel, and that, as a result of her resistance to and criticism of the fraudulent conduct, she was insulated from certain job-related activities, not given assignments, and eventually terminated. In addition, Plaintiff alleges that Mr. Gremmel confirmed that Mrs. Demchak's decision to deny her the ability to cash out vacation time and eventually terminate her

employment was because of her reports of fraud. The court has little difficulty in concluding that Defendant Area was aware that Plaintiff was engaged in protected conduct. Indeed, Plaintiff spoke directly to the company's vice president and provided her with the results of her investigation into the fraudulent conduct. Furthermore, Plaintiff has certainly alleged that there is a causal connection between Defendant Area's knowing that she was engaged in protected conduct and the ultimate termination of Plaintiff's employment.

**IV.** **Conclusion**

At this stage of the litigation, and reading the facts pleaded in the light most favorable to Plaintiff and drawing all inferences in favor of the same, the court concludes that Plaintiff's complaint satisfies Rule 8's pleading requirements because it has provided a short and plain statement of the claim that gives Defendant Area "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Accordingly, the court will deny Defendant Area's motion to dismiss.

An appropriate order will issue.

                                              s/Sylvia H. Rambo
                                              United States District Judge

Dated: June 12, 2014.